CITY OF MOBERLY, Appellant, v. O. U. LASH, Respondent.

Kansas City Court of Appeals, November 11, 1912.

DEAD ANIMAL: Possession: Directed Verdict. An ordinance of a city provided that the person in possession or control of a dead animal should remove it out of the city limits within twelve hours after death. A farmer brought his horse on Saturday evening to a veterinarian in the city to have one of its teeth pulled. In endeavoring to do so, with the owner's help, the horse suddenly died. The owner immediately engaged a man to haul it away, which the latter could not do that evening, it being about dark, but agreed he would do so next morning. The owner left. The horse was not taken away as agreed and when the verterinarian learned that it had not been, he endeavored to get the city officials to do so. Finding they would not, on Monday morning, he had it hauled off. *Held*, that though the proof showed the horse remained on the veterinarian's premises more than twelve hours, yet it did not show him to be in possession of it in the sense of the ordinance, and a directed verdict for defendant was properly ordered.

Query: Whether, conceding the veterinarian was in possession of the horse, he was yet not guilty, in view of his effort to get it taken off when he learned the man employed by the owner had not done so.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*Arthur B. Chamier* for appellant.

*Whitecotton & Wight* for respondent.

ELLISON, J.—Defendant was charged with a violation of an ordinance of the city of Moberly which directed "the owner or person in control or management of any horse, etc., which shall die within the city," to remove it outside the limits within twelve hours after its death and there bury or burn it. On

appeal to the circuit court a peremptory instruction was given by the court to find the defendant not guilty, and the city brought the case here.

No case was made against defendant, and the trial court could do no less than direct a verdict for him. [Carroll v. Transit Co., 107 Mo. 653.] The evidence showed that he was a veterinarian living in Moberly; that he kept a stable or barn on his residence premises near-by other residences. Late Saturday evening, May 13, 1911, one Peter Shuman, a farmer residing near three miles in the country, brought his horse to defendant's barn and engaged him to extract one of its teeth. With Shuman's help, he undertook to do so. In the horse's struggle it suddenly died, presumably from breaking a blood vessel. This was between seven and eight o'clock in the evening. Shuman asked defendant what could be done about getting the horse taken away, when the latter said an old negro man would haul it off and volunteered to telephone to him for Shuman. Shuman waited until the negro came. The negro said (in defendant's presence) he would remove the horse for his hide, but that it was too late to do anything that night and he would haul him off next morning. Shuman agreed to this and left for home, thinking the negro would do as agreed upon. For some reason the negro did not come Sunday morning, and the defendant finding the horse had not been taken away, notified the city authorities, whose duty it was under the ordinance to remove the animal if the "owner or person in possession or control or management" of it failed to do so. The record does not show that the city took any action, and on Monday morning defendant himself got someone to load the animal on a wagon and haul it off.

It is thus seen that the dead horse remained in the barn in the city from about dark Saturday evening, over Sunday, until Monday morning, thus showing that more than twelve hours had passed since it died. But it does not appear that defendant was in possession or

control of it when it died, within a reasonable meaning of the ordinance. The owner was present in possession and assumed direction and charge of the removal by employing the negro to take the horse away. It is clear that defendant did not assume to be in possession or control even after the horse died, for, on learning that the negro had not taken it off, as agreed with the owner, he refused to assume charge and notified the city officials. Then, seeing that no action would be taken, he employed some one to haul it off on Monday morning. This he would be necessarily compelled to do, or else soon abandon his premises.

It is not necessary to say, considering the evidence concerning the owner's honest effort and disappointment in getting the horse away and defendant's efforts in that direction immediately on discovering that it had not been done, that he should have been declared not guilty even if it were conceded that he was in possession. At all events, on account of failure of evidence, the action of the trial court was correct.

The judgment is affirmed. All concur.